The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BINANCE HOLDINGS LIMITED, d/b/a BINANCE.COM,<br><br>Defendant. | No. CR23-178 RAJ<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

## INTRODUCTION

From 2017 through at least 2022, Binance, led by its chief executive officer ("CEO") and founder, Changpeng Zhao, knowingly failed to register as a money services business ("MSB"), willfully violated the Bank Secrecy Act ("BSA") by failing to implement and maintain an effective anti-money laundering ("AML") program, and willfully caused violations of U.S. economic sanctions issued under the International Emergency Economic Powers Act ("IEEPA"), in a deliberate and calculated effort to profit from the U.S. market without complying with U.S. law.

U.S. Sentencing Memorandum – 1
*United States v. Binance* / CR23-178 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On November 21, 2023, Binance entered a Rule 11(c)(1)(C) guilty plea to three counts: (1) conspiracy to conduct an unlicensed money transmitting business ("MTB"), in violation of 18 U.S.C. §§1960(a), 1960(b)(1)(B), and to fail to maintain an effective AML program, in violation of 31 U.S.C. §§ 5318(h), 5322, 31 C.F.R. § 1022.210(a), 18 U.S.C. § 371; (2) conducting an unlicensed MTB, in violation of 18 U.S.C. §§ 1960(a), 1960(b)(1)(B), and 2; and (3) willfully causing violations of U.S. sanctions, in violation of 50 U.S.C. § 1705 and 31 C.F.R. Part 560.

As part of a plea agreement between Binance and the U.S. Department of Justice, Criminal Division, Money Laundering and Asset Recovery Section; National Security Division, Counterintelligence and Export Control Section; and U.S. Attorney's Office for the Western District of Washington, the parties agreed that an appropriate sentence was a criminal fine of $1,805,475,575—accounting for the pecuniary gain to the Company from the offense, adjusted to take into account sentencing factors for businesses under the U.S. Sentencing Guidelines, and including a twenty percent discount based on the Company's partial cooperation (ECF No. 23 ¶¶ 13-14)—as well as a forfeiture of $2,510,650,588 for the violations comprising Count 2 (conducting an unlicensed MTB) and Count 3 (violating IEEPA) (*id.* ¶¶ 15-18). The plea agreement also requires the Company to maintain and enhance its compliance program, as outlined in Attachment C to the plea agreement, and to agree to the appointment of an independent compliance monitor for a term of at least three years, as outlined in Attachment D to the plea agreement.

The agreed-upon sentence of a combined financial penalty of over $4.3 billion and the other obligations imposed under the plea agreement is sufficient but not greater than necessary to achieve the goals of sentencing as set forth in 18 U.S.C. § 3553(a). The Court should impose the agreed-upon sentence on Binance.

U.S. Sentencing Memorandum – 2
*United States v. Binance* / CR23-178 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# SENTENCING GUIDELINES CALCULATION

As outlined in the plea agreement (¶ 13), the parties agree, based on the application of the U.S. Sentencing Guidelines and 18 U.S.C. § 3571(d), that the following provisions with respect to sentence of a fine apply to this case:

- A base fine of $1,612,031,763 under U.S.S.G. § 8C2.4(a)(2) (the pecuniary gain to Defendant from the offense).
- Culpability score of seven (7) points based on U.S.S.G. § 8C2.5, calculated as follows:
    - Base culpability score of five (5) points pursuant to U.S.S.G. § 8C2.5(a).
    - A four-point (4) addition because the organization had more than 1,000 employees and an individual within high-level personnel participated in, condoned, or was willfully ignorant of the offense pursuant to U.S.S.G. § 8C2.5(b)(2)(A)(i).
    - A two-point (2) reduction for cooperation and acceptance of responsibility.
- Calculation of fine range pursuant to U.S.S.G. § 8C2.6:
    - Base Fine: $1,612,031,763
    - Multiplier: 1.4 (min) / 2.8 (max)
    - Fine Range: $2,256,844,468 to $4,513,688,936

Pursuant to the plea agreement (¶ 14), the parties agree that a fine at the bottom of the applicable Sentencing Guidelines range with a twenty percent discount to reflect Defendant's partial cooperation and remediation is appropriate.

# DISCUSSION

Binance's offenses are serious. The U.S. financial system is the global financial system of choice. It provides U.S. businesses and consumers, and the international

U.S. Sentencing Memorandum – 3
*United States v. Binance* / CR23-178 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

marketplace, a safe, secure, and sophisticated system for innovative financial services. Financial institutions, like Binance, are the gateway to the U.S. financial system for those who play by the rules and those who seek to exploit them. The BSA places special responsibilities on financial institutions, requiring them to implement AML programs that protect the institutions themselves and the broader financial system from illicit finance and criminal schemes. Binance's refusal to register as an MSB and its willful failure to implement an effective AML program left Binance, its customers, and the U.S. financial system vulnerable to those who seek to exploit our system for their own gain. And as a result of Binance's failure to implement adequate controls in disregard of U.S. law, Binance willfully caused violations of U.S. sanctions.

The agreed-upon sentence reflects the nature and circumstances of the offenses, the history and characteristics of the defendant, and the seriousness of the offenses. It promotes respect for the law and provides just punishment while affording deterrence to criminal conduct.

### A. Binance Became the Largest Cryptocurrency Exchange by Exploiting the U.S. Market While Defying U.S. Law

From at least early 2018 through the time of the Company's plea, Binance operated the world's largest cryptocurrency exchange, Binance.com. The exchange grew quickly after its launch in 2017 to dominate the cryptocurrency space by targeting the lucrative U.S. market, particularly high-volume customers, whom Binance gave "VIP" status. Binance and its senior leaders, including Zhao, knew that serving U.S. customers required Binance to follow U.S. law. Specifically, Binance was required to comply with the BSA and IEEPA and to register with U.S. Department of the Treasury, Financial Crimes Enforcement Network ("FinCEN") as an MSB. But Zhao and other senior Binance leaders calculated that compliance with U.S. law was too expensive: Binance would be required to either implement effective AML controls, including know-your-customer ("KYC") measures and transaction monitoring, which would be costly and

U.S. Sentencing Memorandum – 4
*United States v. Binance* / CR23-178 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

could cause Binance to lose some customers, or offboard lucrative U.S. customers, limiting Binance's growth.

For example, Zhao, Individual 1,[1] and other senior leaders knew that Binance was required to register with FinCEN as an MSB and to implement an effective AML program that was reasonably designed to prevent Binance from being used to facilitate money laundering. An effective AML program would have included collecting identifying information about customers through KYC protocols, monitoring transactions for suspicious activity, and filing Suspicious Activity Reports ("SARs") with FinCEN. However, Binance allowed certain customers (called "Tier 1" customers) to open accounts and deposit, trade, and withdraw cryptocurrency by providing nothing more than an email address, and, as Zhao and others knew, these "Tier 1" customers comprised the majority of Binance's customers until 2022, when Binance implemented a policy requiring customers to complete KYC. For much of the relevant period, Binance did not systematically monitor transactions for suspicious activity, and Binance never filed a SAR with FinCEN.

### B.     Binance Deceived U.S. Regulators in Its Scheme to Evade U.S. Law

The significant sentence agreed upon by the parties recognizes the nature and circumstances of the offenses and Binance's characteristics. Binance's misconduct was pervasive. As founder and CEO, Zhao built Binance as a company that attempted to operate outside the jurisdiction of any government and cultivated a culture that disregarded compliance with U.S. legal obligations. When Binance grew to the point it could no longer hide from government regulation and law enforcement, Zhao and other senior leaders developed and implemented a scheme to evade U.S. law through manipulation. While creating a public façade that Binance would play by the rules, Zhao

---

[1] *See* ECF No. 1 ¶ 5 (Information) (describing Individual 1).

U.S. Sentencing Memorandum – 5
*United States v. Binance* / CR23-178 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and other senior leaders—including Individual 1, Individual 2[2], and Individual 3[3]—developed and executed a plan to keep Binance's most lucrative U.S. customers on Binance.com to ensure Binance would continue to thrive with minimal compliance controls and a significant U.S. customer base.

By late 2018, instead of complying with U.S. law, as Binance's substantial U.S. user base required, Zhao and Binance's senior leaders developed a plan to manipulate and evade U.S. regulators while continuing to profit from the U.S. financial system. Binance engaged a consultant, who proposed various avenues through which the Company could mitigate its regulatory exposure. Presented with a range of options from the "low-risk" full compliance with U.S. law to the "high-risk" status quo, Binance did not adopt the consultant's recommendations as offered, but nonetheless chose to continue to violate U.S. law by creating a new U.S. exchange to serve U.S. customers, announcing that Binance.com would "block" U.S. persons, but secretly keeping the most profitable U.S. customers on Binance.com without taking steps to make Binance.com compliant with U.S. law.

On recorded calls in June 2019, Zhao and other Binance leaders—including Individuals 1, 2, and 3—schemed to keep Binance's most lucrative U.S. customers on the platform. As Binance's senior leaders knew and discussed, Binance.com's approximately 11,000 VIP customers accounted for 70% of its trading revenue, and approximately one-third of those VIPs were U.S. persons. Rather than lose its U.S. VIP customers, Binance's senior leaders directed employees to help them conceal and obfuscate their U.S. connections, including by creating new accounts with non-U.S. KYC information. As Zhao explained on a recorded call on June 25, 2019, Binance sought to "achieve a reduction in our own losses and, at the same time, to be able to have U.S. supervision

---

[2] Information ¶ 6 (describing Individual 2).
[3] *Id.* ¶ 7 (describing Individual 3).

U.S. Sentencing Memorandum – 6
*United States v. Binance* / CR23-178 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

agencies not cause us any troubles," with the "goal" of having "U.S. users slowly turn into to [sic] other users"—though Binance "cannot say this publicly, of course."

Binance's plan worked: Binance maintained a substantial base of lucrative U.S. customers even after launching the new U.S. exchange Binance.US. Zhao acknowledged that his motive was profit, telling senior leaders in September 2019: "If we blocked US users from day 1, Binance will be not [sic] as big as we are today. We would also not have had any US revenue we had for the last 2 years. And further, we would not have had additional revenue resulted from the network effect." Zhao admitted these actions were wrong, saying it was "better to ask for forgiveness than permission." Indeed, one year after purportedly blocking U.S. users, in September 2020, Binance still had more than 2.5 million U.S. customers, more than from any other country. To continue to conceal these connections, the following month, Binance removed the United States label from its internal report and recategorized U.S. users with the label "UNKWN." In October 2020, according to the internal monthly report, "UNKWN" users represented approximately 17% of Binance's registered user base. And according to Binance's own transaction data, U.S. users conducted trillions of dollars in transactions on Binance.com between August 2017 and October 2022 that generated approximately $1,612,031,763 in profit for Binance.

### C.     Binance's Criminal Acts Allowed Illicit Actors to Exploit the Exchange

Due in part to Binance's failure to implement an effective AML program, illicit actors used Binance's exchange in various ways, including operating mixing services that obfuscated the source and ownership of cryptocurrency; transacting illicit proceeds from ransomware variants; and moving proceeds of darknet market transactions, exchange hacks, and various internet-related scams. For example, between August 2017 and April 2022, there were direct transfers of approximately $106 million in bitcoin to Binance.com wallets from Hydra, a popular Russian darknet marketplace frequently used by criminals

U.S. Sentencing Memorandum – 7
*United States v. Binance* / CR23-178 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that facilitated the sale of illegal goods and services. These transfers occurred over time to a relatively small number of unique addresses, which indicates "cash out" activity by repeat Hydra users, such as vendors selling illicit goods or services. Similarly, from February 2018 to May 2019, Binance processed more than $275 million in deposits and more than $273 million in withdrawals from BestMixer—one of the largest cryptocurrency mixers in the world until it was shut down by Dutch authorities in May 2019.

Additionally, Binance's failure to implement an effective AML program left Binance's customers vulnerable to sanctions violations. Zhao and other Binance senior leaders knew that Binance served customers in the United States and in jurisdictions subject to comprehensive U.S. sanctions; that U.S. sanctions laws generally prohibited U.S. persons from transacting with persons in jurisdictions subject to comprehensive U.S. sanctions; that Binance's proprietary "matching engine" would necessarily cause U.S. persons to transact with persons in jurisdictions subject to comprehensive U.S. sanctions; and that Binance did not have controls in place to prevent such violations of U.S. law—because Binance chose not to collect KYC information from most of its user base or implement effective blocks based on internet protocol ("IP") address.

Because Binance chose not to implement comprehensive controls blocking transactions that violated U.S. sanctions, between in or about January 2018 through May 2022, Binance caused at least 1.1 million transactions in violation of IEEPA between customers in the United States and customers ordinarily resident in Iran, with an aggregate transaction value of at least $898,618,825. And Binance caused millions more in trades between U.S. customers and customers in in other comprehensively sanctioned jurisdictions, including Cuba, Syria, and the Ukrainian regions of Crimea, Donetsk, and Luhansk.

U.S. Sentencing Memorandum – 8
*United States v. Binance* / CR23-178 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### D. The Proposed Sentence Appropriately Holds Binance Accountable for Its Criminal Acts and Achieves the Goals of Sentencing

Binance committed serious crimes in a deliberate scheme to grow as quickly as possible. A significant sentence is warranted for these violations. The proposed sentence is appropriate, holds Binance accountable for its criminal acts, and provides necessary deterrence to other criminal actors. The recommended sentence includes a criminal fine of $1,805,475,575 and a forfeiture of $2,510,650,588 for a financial penalty of more than $4.3 billion, the largest penalty imposed against an MSB in the Department's history and one commensurate with the severity of Binance's criminal conduct.

This sentence is also warranted in light of Binance's other agreements as part of the plea. Binance has admitted its criminal acts, accepted responsibility, and agreed to cooperate with the government, remediate and enhance its compliance program and adopt an independent compliance monitor. Zhao is also no longer Binance's CEO, and the Company barred him from any present or future involvement in operating or managing Binance's business.

The significant financial penalty proposed in the plea agreement, combined with the cooperation and remediation imposed by the agreement, is a just punishment that appropriately reflects the nature, circumstances, and seriousness of Binance's violations and affords adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2). Binance profited from the U.S. financial system without playing by its rules and, as a result, criminals used the exchange to move hundreds of millions of dollars of stolen funds and illicit proceeds. Binance's CEO acknowledged that the strategy of operating in the "grey zone" worked for Binance—the exchange became the largest in the world by serving U.S. customers while skirting U.S. law. While the ultimate "network effect" that Binance enjoyed from serving U.S. customers is unquantifiable, the proposed penalty would ensure Binance does not retain its profit from the U.S. market and additionally punish Binance commensurate with its misconduct, reflecting the seriousness of the offense.

U.S. Sentencing Memorandum – 9
*United States v. Binance* / CR23-178 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The proposed penalty is consistent with other penalties imposed on large financial institutions in prosecutions by the government, where the criminal conduct of those defendants threatened the integrity of the U.S. financial system. For example, in 2015, BNP Paribas S.A. ("BNPP"), a global financial institution headquartered in France, pled guilty to conspiring to violate IEEPA and the Trading with the Enemy Act by processing nearly $9 billion in transactions through the U.S. financial system on behalf of Sudanese, Iranian, and Cuban entities subject to U.S. economic sanctions. BNPP agreed to pay total financial penalties of $8.9736 billion, including forfeiture of $8.8336 billion—reflecting the value of the sanctions-violative transactions that BNPP processed—and a fine of $140 million. In 2019, UniCredit Bank ("UCB") AG, a financial institution headquartered in Germany, pled guilty to conspiring to violate IEEPA and to defraud the United States by processing $316 million of transactions through the U.S. financial system on behalf of an entity designated as a weapons of mass destruction proliferator and other Iranian entities subject to U.S. economic sanctions. UCB AG agreed to forfeit $316,545,816 and pay a fine of $468,350,000. In 2022, Danske Bank A/S, a global financial institution headquartered in Denmark, pled guilty to defrauding U.S. banks regarding its AML program and certain high-risk customers and agreed to forfeit $2 billion. And in 2018, Rabobank National Association (Rabobank), forfeited $368,701,259 as part of a guilty plea to concealing deficiencies in its AML program from its regulator, a sum that reflected illicit funds processed through the bank without adequate BSA/AML review. In those cases, the financial institutions forfeited the full transaction value of the violative transactions, as Binance has agreed to do here.

Finally, but critically, the agreed-upon sentence will promote specific and general deterrence. As part of its plea agreement, Binance has agreed to take substantial measures to ensure its ongoing compliance with U.S. law. And the significant sentence agreed to here demonstrates to other financial institutions that may seek to break the law under the

U.S. Sentencing Memorandum – 10
*United States v. Binance* / CR23-178 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

guise of "innovation" that there will be serious consequences for their criminal actions.

In sum, given the nature and seriousness of Binance's misconduct—it was intentional and led by senior executives, with hundreds of millions of dollars of collateral consequences—the over $4.3 billion financial penalty proposed in the plea agreement is appropriate.

## RECOMMENDATION

Balancing the 18 U.S.C. § 3553(a) factors, the Court should sentence Binance in accordance with the plea agreement to a criminal fine of $1,805,475,575 and a forfeiture of $2,510,650,588.

February 16, 2024

Respectfully submitted,

MARGARET A. MOESER
Acting Chief

TESSA M. GORMAN
United States Attorney

*s/ Kevin G. Mosley*
KEVIN G. MOSLEY
ELIZABETH R. CARR
Trial Attorneys
Money Laundering and Asset Recovery Section
Criminal Division
U.S. Department of Justice

*s/ Michael Dion*
MICHAEL DION
JONAS LERMAN
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
(206) 553-7970
michael.dion@usdoj.gov
jonas.lerman@usdoj.gov

JENNIFER KENNEDY GELLIE
Executive Deputy Chief
performing the duties of Chief

*s/ Beau D. Barnes*
BEAU D. BARNES
ALEX WHARTON
Trial Attorneys
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice

U.S. Sentencing Memorandum – 11
United States v. Binance / CR23-178 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970